**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
IOWA CENTRAL DIVISION**

| | |
|---|---|
| KAREN L. HOOVER,<br><br>          PLAINTIFF,<br><br>vs.<br><br>NCS, INC., d/b/a NOLL COLLECTION SERVICE,<br><br>          DEFENDANT. | **Civil Action No.**<br><br>**COMPLAINT and DEMAND FOR JURY TRIAL** |

NOW COMES the Plaintiff, Karen L. Hoover ("Plaintiff" or "Hoover") by and through her attorney, L. Ashley Zubal, and for her Complaint against the Defendant, NCS, Inc., d/b/a Noll Collection Service (hereinafter "Defendant" or "NCS"), alleges as follows:

## I.     INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq, (hereinafter "FDCPA") and the Iowa Debt Collection Practices Act, § 537.7103, et seq, (hereinafter "IDCPA") which prohibit debt collectors from engaging in abusive, deceptive, and unfair collection practices.

## II.     JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.  Venue in this District is proper in that the Defendant transacts business in Iowa and the conduct complained of occurred here.

1

### III.   PARTIES

3. Plaintiff, Karen Hoover, is a natural person residing in Warren County, Iowa.

4. Defendant, NCS, is a business principally located in Sioux City, Iowa, who is engaged in the collection of debts owed to another in the State of Iowa.

5. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3). Plaintiff is a "debtor" as that term is defined by Iowa Code § 537.7102(6).

6. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Iowa Code § 537.7102(5).

### IV.   FACTUAL ALLEGATIONS

7. At some point in time, the Plaintiff incurred a financial obligation to Payday Express that was primarily for personal, family or household purposes, that allegedly went into default for late payment, and is therefore an alleged "debt" as that term is defined by 15 U.S.C. § 1692a(5) and Iowa Code § 537.7102(3).

8. Sometime thereafter, the debt was sold, assigned, or otherwise transferred to the Defendant for collection, when thereafter the Plaintiff began receiving collection communications from the Defendant in an attempt to collect this debt.

9. Sometime in September or October, 2011, the Plaintiff began receiving collection calls from the Defendant, specifically from Defendant's representative Penelope Gates. Ms. Gates was contacting the Plaintiff in an attempt to collect a debt.

10. During Ms. Gates initial contact with the Plaintiff at her place of employment in the fall of 2011, Ms. Gates began the conversation by requesting the

Plaintiff advise how she intended to pay the debt owed originally to Payday Express. The Plaintiff asked Ms. Gates why she was calling her at work. Ms. Gates replied by providing the cell phone number the Defendant had previously tried to reach and explained that she had been unsuccessful in reaching the Plaintiff at that number. The Plaintiff advised that she no longer had that phone number. The Plaintiff then provided Ms. Gates with her new cell phone number. The Plaintiff further stated that she would like to take care of the delinquency but do to other financial obligations she could not at that time. The Plaintiff requested Ms. Gates contact her in a month on her cell phone. The Plaintiff advised Ms. Gates to cease contacting her at her place of employment as such calls put her job at risk.

11. The Plaintiff received collection correspondence from the Defendant dated January 20, 2012 at her home address. Said notice advised the Plaintiff of her right to dispute the debt and request verification of the debt. However, said notice was sent out well in excess of the time requirement of five days subsequent to the initial telephone communication in violation of 15 U.S.C. § 1692g.

12. Sometime during February, 2012, Penelope Gates contacted the Plaintiff's place of employment requesting to speak with the Plaintiff in an attempt to collect a debt. The Plaintiff's supervisor, Jane Place, answered the phone and spoke with Ms. Gates. Ms. Gates left a message with Ms. Place stating her name and telephone number and requested Ms. Place advise the Plaintiff to call Ms. Gates back as soon as possible. Ms. Place provided the Plaintiff with a written message of the call.

13. Sometime during the first week of May, 2012, Penelope Gates placed a collection call to the Plaintiff at her place of employment in an attempt to collect a debt. The call was placed subsequent to the Plaintiff as well as the Plaintiff's

3

supervisor advising Ms. Gates that the Plaintiff is not allowed to receive calls at her place of employment. At the time Ms. Gates called, the Plaintiff was with a patient and had to excuse herself into another room. Ms. Gates immediately starting asking the Plaintiff how she intended to take care of her account. The Plaintiff began to explain that she had retained an attorney. Ms. Gates began speaking loudly over the Plaintiff and hung up on the Plaintiff.

14. Sometime during the third week of May, 2012, Penelope Gates placed a collection call to the Plaintiff at her place of employment in an attempt to collect a debt. The call was placed subsequent to the Plaintiff as well as the Plaintiff's supervisor advising Ms. Gates that the Plaintiff is not allowed to receive calls at her place of employment. The Plaintiff answered the call and Ms. Gates responded by stating oh good, I am verifying your name is Karen Hoover, the last four of your social is 3402, your date of birth is September 19, 1963 and I'm calling to verify that you were served notice. The Plaintiff stated that she had but she had retained an attorney. The Plaintiff attempted to provide Ms. Gates her attorney's name and contact information but upon doing so Ms. Gates hung up on the Plaintiff.

15. Each communication subsequent to the conversation the Plaintiff had with Ms. Gates in the fall of 2011 occurred where the Defendant had available to them the Plaintiff's cell phone number and home address.

16. The call placed by the Defendant's representative Knight was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

17. As a result of the Defendant's representative's collection calls, the Plaintiff felt embarrassment, humiliation, anxiety, nervousness, confusion, frustration, fear, loss of concentration at work, sense of helplessness, and anger.

18. The collection calls placed by the Defendant to the Plaintiff's place of employment were collection communications in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692c(a)(2); 1692c(a)(3); 1692c(b), 1692d, 1692d(5), 1692d(6), 1692e, 1692e(10), 1692e(11), and 1692f, amongst others.

19. The collection calls placed by the Defendant to the Plaintiff's place of employment were collection communications in violation of numerous and multiple provisions of the IDCPA, including but not limited to Iowa Code §§ 537.7103(1)(f), 537.7103(2), 537.7103(2)(b), 537.7103(2)(d), 537.7103(3)(6); 537.7103(4), 537.7103(4)(a); 537.7103(4)(b) and 537.7103(5)(e), amongst others.

### *Respondeat Superior Liability*

20. The acts and omissions of the Defendant and its representatives employed as agents by Defendant NCS who communicated with Plaintiff as more further described herein, were committee within the time and space limits of their agency relationship with their principal, Defendant NCS.

21. The acts and omissions by Defendant NCS and its representative were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant NCS in collecting consumer debts.

22. By committing these acts and omissions against the Plaintiff, NCS and its representatives were motivated to benefit their principal, NCS.

23. The Defendant is therefore liable to the Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by the Defendant and its collection employees, including but not limited to violations of the FDCPA, in their attempts to collect this debt from the Plaintiff.

### V.     FIRST CLAIM FOR RELIEF: VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

24. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

25. NCS, and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

26. As a result of each and every Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendant herein.

**WHEREFORE,** Plaintiff prays that judgment be entered against the Defendant:

## COUNT I.
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et seq.

- For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against the Defendant and for Plaintiff;

- For an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) against the Defendant and for Plaintiff;

- For an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against the Defendant and for Plaintiff; and

- For such other and further relief as may be just and proper.

### VI.   SECOND CLAIM FOR RELIEF: VIOLATION OF THE IOWA DEBT COLLECTION PRACTICES ACT (IDCPA)

27. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

28. NCS, and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the IDCPA including, but not limited to, each and every one of the above-cited provisions of the IDCPA, Iowa Code § 537.7103 et seq.

29. As a result of each and every Defendant's violations of the IDCPA, Plaintiff is entitled to actual damages pursuant to § 537.5201(1)(y); statutory damages in an amount up to $1,000.00 pursuant to § 537.5201(1)(y); and, reasonable attorney's fees and costs pursuant to § 537.5201(8) from the Defendant herein.

**WHEREFORE,** Plaintiff prays that judgment be entered against the Defendant:

## COUNT II.
## VIOLATIONS OF THE IOWA DEBT COLLECTION PRACTICES ACT
### Iowa Code § 537.7103 et seq.

- For an award of actual damages pursuant to § 537.5201(1)(y) against the Defendant and for Plaintiff;

- For an award of statutory damages of $1,000.00 pursuant to § 537.5201(1)(y) against the Defendant and for Plaintiff;

- For an award of costs of litigation and reasonable attorney's fees pursuant to § 537.5201(8) against the Defendant and for Plaintiff; and

- For such other and further relief as may be just and proper.

## VII.   JURY DEMAND

The Plaintiff respectfully requests a trial by jury.

Respectfully submitted,

  /s/ L. Ashley Zubal
L. Ashley Zubal IS9998256
Marks Law Firm, P.C.
4225 University Avenue
Des Moines, IA 50311
(515) 276-7211
(515) 276-6280
ATTORNEY FOR PLAINTIFF